UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

    Plaintiff,

    v.      CAUSE NO. 3:23-CV-669-DRL-MGG

NOLEN *et al.*,

    Defendants.

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, filed a complaint against nine separate defendants asserting a variety of alleged wrongs. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Scruggs alleges that, on or before November 15, 2022, Correctional Officer Hopkins and another staff member (Mr. Scruggs refers to him as Night Staff P) suggested to Mr. Scruggs that he didn't want to go get his insulin. Mr. Scruggs believes the officers made this suggestion because they didn't want to take him to get his insulin at two or three in the morning, when it was scheduled to be administered. Mr. Scruggs continued

to get his insulin each night. While Mr. Scruggs was being escorted to get his insulin, an officer was required to hold on to the cuffs. Night Staff P was holding on to the cuffs during the escorts. Mr. Scruggs alleges that Night Staff P started touching Mr. Scruggs' buttocks. Mr. Scruggs believes this touching was designed to dissuade him from choosing to go get his insulin, because the officers didn't want to work. Mr. Scruggs wasn't dissuaded; he continued to leave his cell to get his insulin but provided loud commentary about what was happening to him so other inmates would hear.

After about a week, Mr. Scruggs told Night Staff P to "stop 'f___ing' touching [his] butt or [he] would file a P.R.E.A. report on him."[1] ECF 2 at 3. After this, Officer Hopkins took over the hands-on part of the escort. Mr. Scruggs asserts that Officer Hopkins then began "touching on [him]." *Id.* at 3. Mr. Scruggs indicates that Officer Hopkins knew Mr. Scruggs didn't like or want the touching, because Officer Hopkins was present when Mr. Scruggs told Night Staff P to stop. Mr. Scruggs asked Officer Hopkins to stop too, but he wouldn't stop. Officer Hopkins told Mr. Scruggs that the cuffs were near his buttocks, and any touching was incidental, but Mr. Scruggs dismisses this explanation.

Around November 16, 2022, Mr. Scruggs started bending his elbows so that the cuffs weren't near his buttocks. Mr. Scruggs speculates that Officer Hopkins was upset because he couldn't get away with touching his buttocks and claiming the touching was incidental. Officer Hopkins tried to push Mr. Scruggs' hands back down near his

---

[1] The Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. § 30301 *et seq.*, provides for national standards for policies to reduce sexual violence in prison. The court doesn't read Mr. Scruggs' complaint as attempting to bring a cause of action pursuant to PREA. To the extent that may have been Mr. Scruggs' intention, he can't succeed. PREA doesn't provide a private right of action. *See Sims v. Doe*, No. 1:18-cv-2394-TWP-MPB, 2018 WL 4027632, 2 (S.D. Ind. Aug. 22, 2018) (collecting cases).

buttocks. Officer Hopkins threatened to bring a conduct report against Mr. Scruggs for trying to elbow him in the head if he didn't keep his hands down by his buttocks, which would enable Officer Hopkins to "touch on" Mr. Scruggs. *Id.* at 4. Mr. Scruggs concludes that he was sexually touched or harassed by Officer Hopkins to persuade Mr. Scruggs to skip his insulin injections and reduce Officer Hopkins' work.

42 U.S.C. § 1997e(e) provides the following:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

18 U.S.C. § 2246 defines a sexual act as follows:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

To the extent that Mr. Scruggs is describing purposeful touching that falls outside of what would occur while holding on to Mr. Scruggs' handcuffs during an escort, the conduct is wholly unacceptable, but not all unacceptable behavior is actionable. Such is the case here. Mr. Scruggs asserts neither a physical injury related to Officer Hopkins' alleged

3

touching of his buttocks nor a sexual act. Therefore, Mr. Scruggs can't proceed against Officer Hopkins for touching his buttocks while holding on to the cuffs during escorts.

To the extent Mr. Scruggs is alleging that Officer Hopkins' threat to bring a disciplinary action against him was retaliatory, he can't proceed. "To prevail on his First Amendment retaliation claim, [Mr. Scruggs] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotations and citations omitted). Mr. Scruggs complained orally about his buttocks being touched by Officer Hopkins, but Mr. Scruggs doesn't allege facts from which it can be plausibly inferred that the threat of a disciplinary a complaint was made because he complained about the touching. Rather, Mr. Scruggs asserts that the threat was made so that Officer Hopkins could either keep touching Mr. Scruggs' buttocks or avoid work. Therefore, Mr. Scruggs can't proceed on a retaliation claim against Officer Hopkins based on these allegations.

On November 17, 2022, Mr. Scruggs talked to Capt. Lewis and asked him to do something about what was happening to him. Mr. Scruggs indicates that Capt. Lewis did nothing, and the alleged harassment continued. Around November 21, 2022 (after Correctional Officer Hopkins had three days off), Correctional Officer Hopkins again escorted Mr. Scruggs to get his insulin. Mr. Scruggs was placed in handcuffs and his door was opened. Mr. Scruggs was walking over to the bed to have his legs cuffed. Correctional Officer Hopkins allegedly started touching his behind. He was with Sgt.

4

Nolen. After Mr. Scruggs told Officer Hopkins to stop, Sgt. Nolen took over. Mr. Scruggs had his knees on the bed, and Sgt. Nolen pushed Mr. Scruggs into the wall. Officer Hopkins put the cuffs on Mr. Scruggs' feet. Mr. Scruggs told Sgt. Nolen that he was supposed to fix the problem, not make it worse. Sgt. Nolen didn't respond to Mr. Scruggs. Addressing Officer Hopkins, Sgt. Nolen said "Fuck Scruggs, let me show you how to do this." ECF 2 at 5. Mr. Scruggs believes that Sgt. Nolen was going to show Officer Hopkins "how to touch on [him] and get away with it." *Id.* Sgt. Nolen had Mr. Scruggs back out of the cell to be patted down. During the pat down, Sgt. Nolen allegedly rubbed his hands in circles on the sides of his buttocks. This allegation doesn't state a claim for the same reasons that Mr. Scruggs can't proceed against Officer Hopkins; the touching of his buttocks didn't cause a physical injury, and this doesn't constitute a sexual act, though inappropriate absent a safety reason.

Once down in the medical room, Mr. Scruggs repeatedly said that Sgt. Nolen was gay or a "fag."[2] *Id.* at 5. Sgt. Nolen responded by saying, "Okay motherfucker, I'll show you gay." *Id.* at 6. Sgt. Nolen took Mr. Scruggs to the caseworker's room. When Mr. Scruggs asked why they were there, Sgt. Nolen stomped on or kicked Mr. Scruggs' foot.[3] Officer Hopkins then punched Mr. Scruggs twice, and Sgt. Nolen threw him into the cage door six or seven times.

---

[2] This speech by Mr. Scruggs isn't protected by the First Amendment. Confronting a guard verbally in an insubordinate manner can remove speech from First Amendment protections. *See e.g. Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected.").

[3] X-rays later revealed that Mr. Scruggs had a fractured toe.

Under the Eighth Amendment, prisoners can't be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the constitution. *Graham v. Conner*, 490 U.S. 386, 396 (1989), *quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied* 414 U.S. 1033 (1973). Though Mr. Scruggs hasn't plausibly alleged that Sgt. Nolen used excessive force when he shoved Mr. Scruggs on the bed, Mr. Scruggs may proceed against Sgt. Nolen for stomping or kicking his foot and throwing him into the cage door repeatedly on or around November 21, 2022. He may also proceed against Officer Hopkins for punching him on or around November 21, 2022.

Mr. Scruggs is also suing Capt. Lewis for failing to intervene when he learned of Mr. Scruggs' allegations. "[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Capt. Lewis wasn't present when the alleged incident of excessive force occurred, and he can't be held liable for failing to intervene in that use of force. Likewise, Capt. Lewis can't be held liable for not preventing

his officers from engaging in the alleged acts of sexual harassment because, as already explained, that conduct isn't actionable. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation[.]" *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Therefore, Mr. Scruggs can't proceed against Capt. Lewis on a failure to intervene claim.

Mr. Scruggs asked to file a PREA report against Sgt. Nolen and Officer Hopkins. Sgt. Dude took the report, but Mr. Scruggs later found out that the report was never filed. He previously sued Sgt. Dude regarding another matter, and Sgt. Dude thought Mr. Scruggs got him in trouble.[4]

On November 24, 2022, Mr. Scruggs was escorted to get his insulin shot by four correctional officers. Sgt. Nolen wasn't there. He was searching Mr. Scruggs' cell a second time just three days. After searching Mr. Scruggs' cell, Sgt. Nolen came to the medical room. Sgt. Nolen was upset that Mr. Scruggs filed a PREA report against him. He said Mr. Scruggs was a rat and he'd "beat [his] ass." ECF 2 at 10. Lt. Jones was there but did not intervene. Mr. Scruggs asked Sgt. Nolen how he was the bad guy because he didn't want his "ass" grabbed. *Id.* at 10. Mr. Scruggs told Sgt. Nolen that, if he was gay, he needed to keep his "gayness" to himself. *Id.*

---

[4] To the extent Mr. Scruggs is alleging that the report wasn't filed in retaliation for filing a lawsuit against Sgt. Dude previously, Mr. Scruggs hasn't provided sufficient details for the court to determine if he can proceed on this claim. He hasn't indicated when he filed the lawsuit or why he believes there is a link between the filing of the lawsuit and Sgt. Dude's failure to file the PREA report. Mr. Scruggs also asserts that the failure to file the PREA report violated his rights under the First Amendment because Sgt. Dude "killed" his speech by keeping the report from reaching the warden and internal investigations. Mr. Scruggs' assertion that he should be permitted to proceed on a First Amendment claim based on these facts will be addressed later in this order, along with several similar allegations.

Sgt. Nolen went with the four officers that took Mr. Scruggs back to his room. When back in his room, Mr. Scruggs got on his knees on the bed to have the leg cuffs removed. Sgt. Nolen then broke his headphone wire into six parts. Mr. Scruggs turned and asked Sgt. Nolen why he was breaking his "shit." *Id.* Sgt. Nolen allegedly used that as an excuse to touch Mr. Scruggs' buttocks again, but the court has already explained that Mr. Scruggs can't proceed on a claim for the alleged touching of his buttocks.[5]

Mr. Scruggs is also suing Sgt. Nolen for retaliation. Mr. Scruggs alleges that Sgt. Nolen retaliated against him for filing the PREA complaint by searching his room a second time within a few days, threatening to beat him up, and breaking his headphones to create an opportunity to further touch Mr. Scruggs' buttocks. Mr. Scruggs will be permitted to proceed against Sgt. Nolen for retaliating against him by searching his cell, threatening to beat him up, breaking his headphones, and engaging in further sexual harassment of the type Mr. Scruggs had complained about.[6]

---

[5] It doesn't appear that Mr. Scruggs is attempting to bring a claim for the damaged property, but to the extent he is, he can't proceed. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

[6] Mr. Scruggs claims these same acts independently violate the Eighth Amendment's cruel and unusual punishment provision. They don't, but even if they did, the claim would be duplicative. Proceeding on different constitutional theories based on the same facts is redundant. *See Williams v. Snyder*, 150 F. Appx. 549, 552 (7th Cir. 2005) ("The remainder of Williams's substantive legal

8

Mr. Scruggs is suing Lt. Jones for failing to intervene. Mr. Scruggs argues that Lt. Jones heard Sgt. Nolen threaten to beat Mr. Scruggs, knew Sgt. Nolen had beat lots of inmates, and heard the verbal disagreement between them. Mr. Scruggs, however, doesn't allege that Sgt. Nolen beat him. Rather, Mr. Scruggs alleges that Sgt. Nolen again touched his buttocks. As already explained, this type of harassment, even accepting as true that it wasn't incidental to a legitimate purpose, isn't actionable, and there can be no failure to intervene claim in the absence of a constitutional violation. *Harper*, 400 F.3d at 1064. Furthermore, Lt. Jones' comments about beating Mr. Scruggs up didn't put Lt. Jones on notice that Sgt. Nolen would sexually harass Mr. Scruggs. However, Sgt. Nolen's comments may have placed Lt. Jones on notice that Sgt. Nolen was retaliating against him, in violation of the First Amendment. Therefore, Mr. Scruggs will be granted leave to proceed against Lt. Jones for failure to intervene in Sgt. Nolen's alleged retaliation of Mr. Scruggs, which he was allegedly aware of but did nothing about, in violation of the First Amendment.

On November 25, 2022, Mr. Scruggs was escorted to get his insulin shot by Officer Hopkins and an officer from K-group. When he was in the medical room, Lt. Jones, Sgt. Nolen, and two other officers entered. At this point, Sgt. Nolen knew the content of the PREA report Mr. Scruggs filed against him. He stated that Mr. Scruggs told on him for breaking his toe. Sgt. Nolen then started walking in and out of the medical room while

---

theories . . . warrant little discussion [b]ecause they all involve the same set of facts . . . they would be redundant even if we found that he stated a claim.); *Conyers v. Abitz*, 416 F.3d 580, (7th Cir. 2005) (dismissing claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (Analyzing allegations under the most "explicit source[s] of constitutional protection.").

rubbing his hands together and saying "ow ow ow" repeatedly. ECF 2 at 12. He then said, "I'll bust you up." *Id.* Mr. Scruggs believes this was an effort to get him to agree to participate in a one-on-one fight with Sgt. Nolen. According to Mr. Scruggs, guards sometimes offer inmates an opportunity to fight with no conduct report. If the guard gets beaten up, other guards intervene, jump the inmate, and tell the inmate that, if they report them, the inmate will receive a class A assault on staff write up, lose a year of good time credit, and be charged criminally. Sgt. Nolen then started saying he would write Mr. Scruggs up for threatening him, because that requires no evidence. When Mr. Scruggs said that he hadn't said anything to him, Sgt. Nolen claimed he had seven officers that would say differently. Lt. Jones didn't say or do anything about Sgt. Nolen's threat. Mr. Scruggs may proceed on a retaliation claim against Sgt. Nolen based on the events on November 25, 2022.[7] He may also proceed against Lt. Jones for not intervening when Sgt. Nolen threatened to retaliate against Mr. Scruggs, in violation of the First Amendment.

In addition to the PREA report, Mr. Scruggs submitted several grievances about these events. On November 26, 2022, he submitted grievances about Sgt. Nolen's behavior on November 24, 2022 and November 25, 2022. On December 2, 2022, and December 5, 2022, Mr. Scruggs filed grievances against Warden Galipeau, the commissioner, and Grievance Officer Smith for blocking his reporting, violating the Indiana Code, and preventing further investigation. He is suing Grievance Officer Smith, Warden Galipeau, and the commissioner for "killing" his speech.

---

[7] Mr. Scruggs also alleges that Sgt. Nolen's conduct violates the cruel and unusual punishment clause of the Eighth Amendment. This too would be duplicative, so won't be permitted.

On December 16, 2022, Mr. Scruggs wrote a grievance about talking to one of his PREA responders—the person who took his report. He asked how PREA reports are processed. He was told that, for WCU, the reports go to Capt. Lewis and then to Hicks before being forwarded to Internal Investigations and the warden. The grievance was not filed, so Mr. Scruggs is suing Grievance Officer Smith for "killing" his speech. He is also suing Capt. Lewis and Hicks, should internal investigations and the warden claim that the grievance never made it to their offices.

In Mr. Scruggs' view, not processing the PREA report and grievances infringed upon his First Amendment right to free speech. Mr. Scruggs knows he has no right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). He indicates, however, that his claim is *not* about his inability to access the grievance process but about his speech not making it to the intended recipient. The First Amendment does not guarantee Mr. Scruggs unfettered access to prison officials to communicate his many grievances. Rather, it provides him with the right to petition the courts. Mr. Scruggs filed this lawsuit, and that demonstrates that his First Amendment right to petition the government for a redress of grievances has not been infringed. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Because destruction or mishandling of grievances does not alone violate the First Amendment, Mr. Scruggs will not be permitted to proceed on this claim.

Mr. Scruggs is not proceeding *in forma pauperis*. Therefore, the court will not serve the defendants pursuant to 28 U.S.C. § 1915(d). Rather, it is his obligation to serve the

11

defendants with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4.

For these reasons, the court:

(1) GRANTS Christopher L. Scruggs leave to proceed against Sgt. Nolen and Officer Hopkins in their individual capacities for compensatory and punitive damages for using excessive force against him on November 21, 2022, in violation of the Eighth Amendment;

(2) GRANTS Christopher L. Scruggs leave to proceed against Sgt. Nolen in his individual capacity for compensatory and punitive damages for retaliating against him for filing a PREA report on November 24, 2022, by searching his cell, threatening to beat him up, breaking his headphones, and engaging in further sexual harassment of the type Mr. Scruggs had complained about, in violation of the First Amendment;

(3) GRANTS Christopher L. Scruggs leave to proceed against Sgt. Nolen in his individual capacity for compensatory and punitive damages for retaliating against him for filing a PREA report by threatening to beat him up and bring disciplinary charges against him on November 25, 2022, in violation of the First Amendment;

(4) GRANTS Christopher L. Scruggs leave to proceed against Lt. Jones for failure to intervene in Sgt. Nolen's alleged retaliation of Mr. Scruggs, which he was allegedly aware of on November 24, 2022 and November 25, 2022, but did nothing about, in violation of the First Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Sgt. Dude, Grievance Officer Shannon Smith, Warden Galipeau,

IDOC Commissioner, Capt. Lewis, Hicks;

(7) DIRECTS the clerk to sign and seal summons for Sgt. Nolen, Officer Hopkins, and Lt. Jones, and send them to Christopher L. Scruggs; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Nolen, Officer Hopkins, and Lt. Jones to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

April 24, 2024                             *s/ Damon R. Leichty*
                                           Judge, United States District Court