UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

        Plaintiff,

    v.                                                    CAUSE NO. 3:23-CV-669 DRL-SJF

NOLEN *et al.*,

        Defendants.

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds in this case on claims arising under the First and Eighth Amendment against Sergeant Nolen, Officer Hopkins, and Lieutenant Jones based on alleged excessive force and retaliation that occurred from November 21, 2022 to November 25, 2022. ECF 5. The defendants filed the pending summary judgment motion, arguing that Mr. Scruggs did not exhaust administrative remedies with respect to the claim that Lieutenant Jones failed to intervene when Sergeant Nolen retaliated against him on November 24, 2022. ECF 44. Mr. Scruggs also filed a motion for leave to file a surreply (ECF 53), which the court grants.

The allegations in the complaint pertaining to the claim that Lieutenant Jones failed to intervene when Sergeant Nolen retaliated against Mr. Scruggs are as follows. On November 24, 2022, Mr. Scruggs arrived at the medical room for an insulin shot. ECF 2 at 9-12. Upon arrival, he observed the presence of Lieutenant Jones and the absence of Sergeant Nolen, who was searching Mr. Scruggs' cell. Sergeant Nolen arrived at the

medical room later and threatened to physically harm Mr. Scruggs for filing a report under the Prison Rape Elimination Act against him. *Id.* Though Lieutenant Jones was present, he did not intervene. *Id.* When Sergeant Nolen and Mr. Scruggs returned to Mr. Scruggs' cell, Sergeant Nolen broke Mr. Scruggs' headphones and shoved him into the wall. *Id.* According to the complaint, Sergeant Nolen did not need to escort Mr. Scruggs to his cell given the presence of other correctional staff, including Lieutenant Jones. *Id.*

In an affidavit, Gregory Gill, litigation liaison at the Westville Correctional Facility, attests that a grievance process is available to inmates. ECF 44-1 at 1-3. The policy sets forth a three-step grievance process. *Id.* at 3-5. First, an inmate must file a formal grievance with the grievance specialist. *Id.* Inmates must submit formal grievances within ten business days of the incident at issue. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may file an appeal with the warden or his designee. *Id.* Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.* The grievance policy also requires that grievances "explain how the situation or incident affects the offender" and that they "suggest appropriate relief or remedy." *Id.*

On November 26, 2022, Mr. Scruggs prepared a grievance regarding his alleged interactions with correctional staff on November 24, 2022:

> **Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance:** After being attacked by Nolen and Hopkins on 11-21-22, they had two days off. When they came back on 11-24-22, I was again taken to insulin. This time, four officers were at my door as to try to intimidate me into not coming out for insulin. I told them I was still coming out. So they came in and everything went cool. I was taken to insulin. My butt was not touched

during the pat down or nothing. I went to insulin/med room and Lt. Jones was there. Nolen was not there as he was tossing my room again as he did on 11-21-22. He came to the med room later and started talking bull to me to which I responded with questions about "how am I the bad guy because I don't want my ass touched?" I was also saying "keep your gayness to yourself." So me and Nolen are going back and forth on my way back to my room. Me about to stop being a fag and him about "don't get my ass beat again." So when I got in my room, Nolen started pulling apart my headphone wire breaking them into six pieces. I could already see what he was doing but when I turned my head and asking him why he was breaking my shit, he used that as an excuse to touch my butt again. He grabbed one of my butt cheeks in each hand and pushed me into the wall and said face the wall and don't worry about what I'm doing. I filed a PREA report.

**State the relief that you are seeking:** I seek that Nolen stop his homosexual attacks on me and that he stop touching my butt, and stop pushing me into things. I seek that all my interactions with Nolen be stopped or videoed so as to prevent further sexual assault . . . .

ECF 44-5 at 3.

On November 26, 2022, Mr. Scruggs also prepared a grievance regarding his alleged interactions with correctional staff on November 24, 2022:

**Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance:** On 11-25-22, I once again was taken to insulin by Hopkins and other K-group staff. When I got to the med-room, I heard the hall door open. In came Sgt. Nolen, Lt. Jones, and the other two C.O.s that took me to insulin on 11-24-22. Nolen came in and started saying that I told on him about breaking my toe. I told him that I am going to report everything he does to me. He then started walking in and out the medical room door saying "ow, ow, ow, ow." He then said that he would bust me up. This as if [he] wanted me to agree to one of the little fights the staff be having with inmates where staff trick the inmates into fighting by telling them that the fight will be one on one but when the staff start to get beat up all the rest of the staff jump in. So when that did not work, Nolen started saying I told about my toe and that he would start writing me up for threatening. I said "threatening. I ain't say nothing to you." Nolen then said that he had 7 witnesses that would say different. (There was only 6 people other than Nolen and I in the room.) He made his threat to retaliate again to which I said, so I have 300 write ups. He then said, good then, it will be believed because it's in your pack." The

Lt. said nothing about Nolen's threat showing he would sign off on any false write ups knowingly.

**State the relief that you are seeking:** I seek that something be done to protect me from Nolen's retaliation with conduct reports for my filing of (2) PREA reports against him. This is what his threat to me was verbatim. This was said in front of the Lt. which said nothing and in front of the nurse and (2) other C.O.s. Thus, something had to be done to keep Nolen away from me per the PREA policy . . . or that all interaction with K-group be video recorded as Nolen made the threats in front of his supervisor and his supervisor did or said nothing. He even counted his supervisor as one of this fake witnesses.

*Id.* at 4. According to the affidavit of Gregory Gill, the grievance office logged these grievances under one grievance number because they pertained to an ongoing series of events and were prepared and submitted on the same day. ECF 44-1 at 3.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The law takes a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative

process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

A greivance's purpose is to alert officials to a problem so that action can be taken to remedy it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). "[I]n line with the purpose of the PLRA—to give a prison an opportunity to correct a problem before litigation [—], prisoners must provide some identifying information about the accused individuals." *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly investigate and resolve grievances." *Id.*

This summary judgment dispute focuses on whether the grievance included sufficient information to satisfy the exhaustion requirement with respect to the allegations that Lieutenant Jones failed to intervene in Sergeant Nolen's retaliatory conduct toward Mr. Scruggs on November 24, 2022. The defendants' central argument is that "Mr. Scruggs did not comply with the policy's requirements by explaining how the situation or incident involving Lt. Jones affected him, nor did he suggest any appropriate or proper relief," though they concede that Mr. Scruggs' adequately complied with the policy requirements with respect to the related claim against Sergeant Nolen. The

problem with this argument is that the Sergeant Nolen's allegedly retaliatory conduct and the alleged effect of Lieutenant Jones' failure to intervene on Mr. Scruggs are one and the same. Similarly, the remedy requested by Mr. Scruggs in the grievance on the November 24 events in which he seeks intervention to prevent further harassment from Sergeant Nolen addresses both Sergeant Nolen's allegedly retaliatory conduct and Lieutenant Jones' alleged failure to provide intervention.

The court further finds that Mr. Scruggs' grievance on the November 24 events fulfilled the essential purpose of a grievance. The grievance alerted prison staff to Sergeant Nolen's alleged harassment on November 24, 2022, and provided them an opportunity to correct it through Lieutenant Jones or otherwise. The grievance also identifies Lieutenant Jones as an individual present for some of the interaction between Mr. Scruggs and Sergeant Nolen. Though the extent of Lieutenant Jones' participation and the specific reason that he was named are unclear from the grievance, the court finds that the information provided was adequate to enable an investigation and to suggest that Lieutenant Jones' inclusion in such an investigation might be appropriate.

Moreover, the grievance regarding the events on November 25, 2022 removed all doubt as to whether Mr. Scruggs' concerns encompassed Lieutenant Jones and his inattention toward Sergeant Nolen's misconduct. This grievance was filed at the same time as the grievance regarding the events on November 24, 2022, and the grievance office assigned them the same grievance number, suggesting that it considered them to be two parts of a single grievance.

Consequently, the court finds that Mr. Scruggs' grievances included sufficient information to satisfy the exhaustion requirement with respect to the allegations that Lieutenant Jones failed to intervene in Sergeant Nolen's retaliatory conduct toward Mr. Scruggs on November 24, 2022. Therefore, the court denies summary judgment.

As a final matter, the court will address Mr. Scruggs' contentions that the summary judgment motion is a basis for sanctions under Fed. R. Civ. P. 11. ECF 34, ECF 50. Notably, the material facts were not in dispute, so the contentions that the defense relied on correctional staff who "lie, lie, lie" or that they created "sham issues of fact" are unfounded. ECF 32 at 2; ECF 50 at 4. Further, though the defendants did not prevail on this motion, the court cannot find that they presented a frivolous argument. It is true that Mr. Scruggs' grievance on the events on November 24, 2022 obliquely pointed to Lieutenant Jones' role in Sergeant Nolen's alleged course of harassment, but this doesn't mean that a reasonable person couldn't argue the defense's position. The court also observes that the motion focused on one part of one claim against one defendant, attacking only the portion of Mr. Scruggs' lawsuit on which the defendants were most likely to succeed. The narrowly tailored aspect of this motion persuades the court that the defendants did not file it for an improper purpose, such as to harass or to cause unnecessary delay. Consequently, the court declines to find that sanctions under Rule 11 are appropriate for the summary judgment motion.

For these reasons, the court:

(1) GRANTS the motion for leave to file a surreply (ECF 53); and

(2) DENIES the motion for summary judgment (ECF 44).

SO ORDERED.

March 21, 2025

_s/ Damon R. Leichty_
Judge, United States District Court