UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS,<br>Plaintiff,<br>v.<br>NOLEN *et al.*,<br>Defendants. | CAUSE NO. 3:23cv669 DRL-SJF |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds on the following claims:

(1) An Eighth Amendment claim against Sergeant Nolan and Officer Hopkins using excessive force on him on November 21, 2022;

(2) A First Amendment claim against Sergeant Nolan for retaliating against him for filing a grievance under the Prison Rape Elimination Act (PREA) on November 24, 2022, by searching his cell, threatening to beat him up, breaking his headphones, and subjecting him to unwanted touching;

(3) A First Amendment claim against Sergeant Nolan for retaliating against him for filing a PREA grievance on November 25, 2022, by threatening to beat him up and to issue a conduct report; and

(4) A claim against Lieutenant Jones for failing to intervene with respect to Sergeant Nolan's retaliatory conduct on November 24, 2022, and November 25, 2022.

On May 27, 2026, the defendants filed a summary judgment motion on all claims.

FACTS

According to the complaint (ECF 2), Mr. Scruggs resided in the Westville Correctional Unit at all relevant times. Before November 21, 2022, Officer Hoskins and Mr. Scruggs had engaged in a series of disputes relating to the manner in which Mr.

Scruggs was escorted to the medical unit for insulin shots, which included accusations of unwanted touching and threats to issue conduct reports. On November 21, 2022, Officer Hoskins and Sergeant Nolan arrived at Mr. Scruggs' cell and subjected him to unwanted touching before escorting him to the medical unit. In the medical unit, Mr. Scruggs repeatedly accused Sergeant Nolan of being gay, in offensive terms. Officer Hoskins and Sergeant Nolan then escorted Mr. Scruggs to a caseworker's office. There, Sergeant Nolan stomped on Mr. Scruggs' foot and slammed him into a cage door seven times, and Officer Hoskins punched Mr. Scruggs twice. Later that day, Mr. Scruggs spoke to Sergeant Due about filing a PREA grievance against Officer Hoskins and Sergeant Nolan. Mr. Scruggs provided a oral report, but Sergeant Due ultimately never conveyed these concerns to the internal investigations unit.

According to medical records, on November 22, 2022, Mr. Scruggs sought medical treatment in connection with the use of force incident. ECF 127-6 at 66-67. He reported that correctional staff had stomped on his big right toe, breaking it, and that his right side and arm hurt from correctional staff punching him and throwing him into a gate. A nurse found that the big toe was tender, painful, warm, swollen, and discolored but that Mr. Scruggs walked with a steady gait with no difficulty climbing stairs. The nurse found no discoloration, swelling, abrasions on the right arm or right side. Foot X-rays subsequently revealed a bone fracture in the toe. *Id.* at 55-57.

According to the complaint, on November 24, 2022, Sergeant Nolan searched Mr. Scruggs' cell as other correctional staff escorted him to the medical unit where Lieutenant

Jones was present. Sergeant Nolan entered the medical unit, referenced the PREA grievance, and said he would beat Mr. Scruggs up. Sergeant Nolan and Mr. Scruggs engaged in a verbal altercation where Mr. Scruggs again accused Sergeant Nolan of being gay, and Sergeant Nolan continued to threaten to beat Mr. Scruggs up. Upon returning to the cell, Sergeant Nolan broke Mr. Scruggs' headphones and then subjected him to unwanted touching, specifically, "grabb[ing] a butt cheek in each hand and push[ing] [him] into a wall," while ordering him to face the wall. ECF 2 at 10. At his deposition, Mr. Scruggs testified that Lieutenant Jones did not accompany him all the way to his cell but remained at the bottom of the stairs. ECF 120 at 35-36. He further testified that Lieutenant Jones was not present when Sergeant Nolan broke his headphones. *Id.*

According to the complaint, on November 25, 2022, Officer Hoskins escorted Mr. Scruggs to the medical unit, where Sergeant Nolan and Lieutenant Jones were present. Sergeant Nolan mentioned that Mr. Scruggs had reported him for breaking his toe, and Mr. Scruggs "told [Sergeant Nolan] that [he] was going to report everything [Sergeant Nolan] does to [him]." ECF 2 at 12. Sergeant Nolan threatened to beat Mr. Scruggs up in attempt to persuade Mr. Scruggs to agree to fight him. When Mr. Scruggs declined, Sergeant Nolan threatened to issue Mr. Scruggs a conduct report for threatening and that he had seven witnesses.[1]

---

[1] The disciplinary policy defines the offense of threatening as follows:

> 1. Communicating to another person an intent to physically harm, harass, or intimidate that person or someone else;

Later, on November 25, 2022, a nurse observed that Mr. Scruggs' big right toe was aligned with his other toes without warmth, redness, or obvious abnormalities. ECF 127-6 at 59-62.

On November 26, 2022, Mr. Scruggs submitted a grievance asserting that Officer Hoskins and Sergeant Nolan subjected him to unwanted touching and that Sergeant Nolan stomped on his toe. ECF 127-4. On November 30, 2022, the internal investigations unit received the grievance. ECF 127-5. On December 1, 2022, Investigator Statham interviewed Mr. Scruggs in connection with the grievance. ECF 133. On December 8, 2022, Investigator Statham interviewed Officer Hoskins and Sergeant Nolan in connection with the grievance. *Id.*

Sergeant Nolan filed an affidavit in which he attests that cells within the Westville Correctional Facility may be searched at random at any time and that assigned officers are instructed to search seven random cells per shift. ECF 127-1. Departmental policy does not restrict how often a particular cell may be searched. *Id.* Sergeant Nolan attests that, on November 21, 2022, he escorted Mr. Scruggs to and from the medical unit but did not take him to a caseworker's office, punch him, slam him into the gate, or break his toe. *Id.* Mr. Scruggs asked to file a PREA grievance, but no PREA coordinator was on duty at

---

> 2. Communicating an intent to cause damage to or loss of that person's or another person's property; and
>
> 3. Communicating an intent to intentionally make an accusation that he/she knows it untrue or false.

Indiana Department of Correction, *Adult Disciplinary Process Appendix I: Offenses*, available at https://www.in.gov/idoc/files/ADP-Attachment-I-Offenses-3-1-2020.pdf.

the time. *Id.* He did not know that Mr. Scruggs had submitted a PREA grievance or what the contents were until interviewed by the internal investigations unit on December 8, 2022. *Id.* Officer Hoskins also attests that, on November 21, 2022, he escorted Mr. Scruggs to and from the medical unit but did not take him to a caseworker's office, punch him, slam him into the gate, or break his toe. ECF 127-3. Lieutenant Jones attests that he had no knowledge of Mr. Scruggs' PREA grievances against Sergeant Nolan and Officer Hoskins until reviewing the initial filings in this case. ECF 127-2.

The defendants also submitted video recordings from November 24, 2022, of Sergeant Nolan and Officer Hoskins removing Mr. Scruggs from his cell and returning him to his cell. ECF 133. The video recordings depict a narrow hallway in which Mr. Scruggs is moved from his cell to the stairwell directly across the hall. *Id.*

## STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and

draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

DISCUSSION

A. *Excessive Force Claim.*

The defendants argue that they are entitled to summary judgment on the excessive force claim against Officer Hoskins and Sergeant Nolan because the video recordings and medical records do not corroborate the use of excessive force as described by Mr. Scruggs. They note that the video recording does not depict Mr. Scruggs with visible signs of distress, such as clutching his ribs or limping and that his medical records show no sign of injury with respect to his right side or right arm. They also note that the medical records indicate that any external signs of a toe injury had subsided just four days after the purported use of force.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against convicted prisoners. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009. Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* at 890.

The parties have submitted opposing attestations as to whether the use of force occurred, and Mr. Scruggs' offensive language alone would not warrant the use of force as described by Mr. Scruggs. The medical records are inconclusive as to whether Mr. Scruggs was subjected to the use of force as he alleges. The medical records from November 22, 2022, and the subsequent x-ray demonstrate that Mr. Scruggs suffered a toe injury consistent with his allegations that Sergeant Nolan stomped on his toe on November 21, 2022. Though the medical records contain no objective corroboration that Mr. Scruggs had been punched or slammed into a gate, not every use of force leaves an obvious injury.

The video recordings are similarly inconclusive. They allow for only a brief glimpse of Mr. Scruggs as he enters and exits the cell and crosses the narrow hallway between the stairwell and his cell. The brevity of the footage and the manner in which Mr. Scruggs is being escorted by correctional staff guiding him from behind by his handcuffed arms through a narrow hallway make it difficult to discern the presence or absence of a limp, and the fact that Mr. Scruggs did not show other signs of distress does not unequivocally suggest that Mr. Scruggs had not been punched or slammed into a gate. At base, a reasonable jury could believe Mr. Scruggs' testimony regarding the use of force even if they were also presented with the defendants' testimony, the medical records, and the video recordings. Consequently, the court finds a genuine dispute of material fact as to whether the use of force occurred and denies the summary judgment motion with respect to this claim.

B. *Retaliation Claims.*

The defendants argue that they are entitled to summary judgment because Sergeant Nolan could not have been aware of Mr. Scruggs' PREA grievance on November 24 and November 25, 2022. According to the defendants, Mr. Scruggs did not submit his PREA grievance until November 26, 2022, and Sergeant Nolan did not learn of the PREA grievance until his interview with internal investigations on December 8, 2022.

To state claim of First Amendment retaliation, Mr. Scruggs must demonstrate that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

> The standard for determining whether an action is sufficiently adverse to constitute retaliation is well established: it must be likely to deter a person of ordinary firmness from continuing to engage in protected activity. This is an objective standard; it does not hinge on the personal experience of the plaintiff. Furthermore, the harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse. Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse.

*Holleman v. Zatecky*, 951 F.3d 873, 880–81 (7th Cir. 2020).

Logically, Sergeant Nolan could not have retaliated against Mr. Scruggs for submitting a grievance that Mr. Scruggs had not yet submitted, nor would a reasonable jury be able to say Sergeant Nolan, on this record, knew specifically of the later written grievance to act in response. But the record offers a basis for a reasonable jury to find that

Mr. Scruggs made attempts to submit a grievance regarding the alleged assault on the same day it occurred (November 21, 2022), including through Sergeant Nolan. Sergeant Nolan attests that Mr. Scruggs asked him for assistance in submitting a PREA grievance on November 21, 2022, and this request occurred after Mr. Scruggs had repeatedly accused Sergeant Nolan that same day of subjecting him to unwanted touching. A reasonable jury could say there was no mystery as to the nature of the complaint being communicated, and that this alone constituted protected activity. From there, without success with Sergeant Nolan, Mr. Scruggs attests that, later on November 21, 2022, he orally conveyed a PREA grievance regarding this assault to Sergeant Due, eventually culminating in the written grievance days later. Consequently, the record indicates that Sergeant Nolan had sufficient information to understand that Mr. Scruggs was grieving his treatment on November 21, 2022 when they talked.

The defendants cite *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009), for the proposition that a threat to submit a grievance is not entitled to the same First Amendment protections as a grievance. But here, Mr. Scruggs did not merely threaten to submit a grievance; he communicated the desire to submit one based on what Mr. Scruggs and Sergeant Nolan both understood to be its substance, so a reasonable jury could say. Because the record suggests that Sergeant Nolan had alternative means to understand that Mr. Scruggs was exercising his First Amendment right to grieve his treatment, even before the written grievance, the court finds a genuine dispute of material fact as to whether, on November 24 and November 25, 2022, Sergeant Nolan was aware

of Mr. Scruggs' efforts to submit a grievance relating to the events occurring on November 21, 2022.

The defendants also argue that Sergeant Nolan had valid penological reasons for his actions given his instructions to conduct random cell searches within the Westville Control Unit and given that Mr. Scruggs' use of offensive language would have warranted disciplinary action for the offense of disorderly conduct. But these arguments overlook the principle that "[c]onduct that does not independently violate the Constitution can form the basis for a retaliation claim, if that conduct is done with an improper, retaliatory motive." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Further, though Sergeant Nolan may have had a valid basis for issuing a conduct report for Mr. Scruggs' offensive language on November 21, 2022, the focus of the retaliation claim is on Sergeant Nolan's threat to issue a conduct report for threatening on November 25, 2022—something near in time. Even if Sergeant Nolan had a valid basis to issue a conduct report for threatening, Mr. Scruggs' account could permit a reasonable jury to find that his efforts to submit a grievance of known substance may have motivated Sergeant Nolan's threat to issue such a conduct report.

Additionally, a reasonable jury could conclude that the totality of circumstances described by Mr. Scruggs, including the threatened conduct report, the unwanted touching, threats of violence, and broken headphones, could dissuade a prisoner of ordinary firmness from submitting further grievances. Therefore, the court denies the

summary judgment motion with respect to the claims of First Amendment retaliation against Sergeant Nolan.

C. *Failure to Intervene*.

The defendants argue that they are entitled to summary judgment on the claim that Lieutenant Jones failed to intervene when Sergeant Nolan retaliated against Mr. Scruggs on November 24 and November 25, 2022. They repeat the argument that Sergeant Nolan had no knowledge of Mr. Scruggs' grievance against Sergeant Nolan and could not have been aware of Sergeant Nolan's retaliatory intent. "[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

The court considers the events of November 24 and November 25, 2022, from the perspective of Lieutenant Jones. On November 24, 2022, Lieutenant Jones was in the medical unit when Sergeant Nolan searched Mr. Scruggs' cell. Mr. Scruggs attested that Lieutenant Jones remained in the medical unit when Sergeant Nolan referenced the PREA

grievance and threatened to beat Mr. Scruggs up. Mr. Scruggs testified that Lieutenant Jones was not present when Sergeant Nolan broke Mr. Scruggs' headphones, which occurred shortly before Sergeant Nolan subjected him to unwanted touching. Mr. Scruggs also testified that Lieutenant Jones remained at the bottom of the stairs as Sergeant Nolan proceeded to escort Mr. Scruggs into his cell. On November 25, 2022, Lieutenant Jones was present in the medical unit for the duration of the interactions between Sergeant Nolan and Mr. Scruggs in which Sergeant Nolan mentioned that Mr. Scruggs had reported him for breaking his toe.

The court finds that Lieutenant Jones had no reasonable opportunity to intervene with respect to the cell search given that it occurred outside his presence with no indication that he was aware of it before Sergeant Nolan had completed the search. The court further finds that Lieutenant Jones had no reasonable opportunity to intervene with respect to the broken headphones or the unwanted touching. Even if he was at the bottom of the stairs, Mr. Scruggs' description of events indicates the breaking of the headphones and the unwanted touching occurred in quick succession that would not have allowed an officer positioned at the bottom of the stairs a reasonable opportunity to intervene.

By contrast, Lieutenant Jones was present during the verbal exchanges between Sergeant Nolan and Mr. Scruggs in the medical unit in which Sergeant Nolan allegedly referenced the PREA grievance and allegedly threatened to beat Mr. Scruggs up and issue a conduct report against him. Substantial questions remain about how Lieutenant Jones might have interpreted these verbal exchanges; but, on this record, a reasonable jury

could conclude that Lieutenant Jones was aware of their unlawful retaliatory motive and had a realistic opportunity to intervene.

Therefore, the motion for summary judgment is partially granted with respect to the failure to intervene claim against Lieutenant Jones. The allegations that Lieutenant Jones failed to intervene in the cell search, the breaking of the headphones, and the unwanted touching are dismissed, but Mr. Scruggs may proceed on the allegation that Lieutenant Jones failed to intervene with respect to Sergeant Nolan's threats of violence and threat to issue a conduct report.

D. *Qualified Immunity*.

The defendants argue that Sergeant Nolan and Lieutenant Jones are entitled to qualified immunity on the retaliation and failure to intervene claims. Generally, government officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Thus, in order to evaluate a claim of qualified immunity, the court engages in a two-step analysis. First, the court considers whether a plaintiff's claim states a violation of his constitutional rights. Then, the court determines whether those rights were clearly established at the time the violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The unlawfulness of a particular official's action must be apparent "in light of the pre-existing law." *Id.* A party may demonstrate that a right was clearly established by presenting a closely analogous case establishing the defendant's conduct was unconstitutional or by presenting evidence the defendant's conduct was so patently violative of a constitutional right that reasonable officials would know without guidance from a court. *See Hope*, 536 U.S. at 739–40.

The defendants specifically argue that they are entitled the qualified immunity because Sergeant Nolan had the authority to search Mr. Scruggs' cell, to confiscate items from his cell, and to issue conduct reports against Mr. Scruggs for disruptive behavior and because Lieutenant Jones did not know about the PREA grievance. Though Sergeant Nolan may have had the authority to conduct cell searches and to threaten inmates with conduct reports, it is well established that conduct that is otherwise constitutional may become unconstitutional if performed with an unlawful retaliatory motive. *See Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Further, Lieutenant Jones' awareness of the PREA grievance is a genuinely disputed material fact. Therefore, the court finds that the defendants are not entitled to qualified immunity on any of the remaining claims.

E. *Other Pending Motions.*

Mr. Scruggs also filed a document titled, "Objections to Defendants' Reply," and the defendants filed a motion to strike this document because it amounts to an unauthorized surreply. Mr. Scruggs replies that the objections were not intended for him to have the last word on summary judgment but instead to preserve his concerns for purposes of appeal. To the defendants' point, objections are not ordinarily a part of the summary judgment process, and these particular objections appear functionally indistinguishable from a surreply. However, the court declines to strike the objections given that they are broadly relevant to this case and do not appear to prejudice the defendants. None of the objections were material to any of the court's summary judgment findings, nor do they appear to seek any relief from the court. Therefore, the motion to strike is denied.

Finally, Mr. Scruggs filed a series of motions in which he alleges that the video recordings submitted by the defendants in support of summary judgment omit the excessive touching depicted on the video recordings provided to Mr. Scruggs' during discovery and instead depict "a normal pat search." ECF 151, ECF 152, ECF 153. He further contends that the summary judgment recordings have been fraudulently altered.

As indicated, the video recordings submitted for summary judgment depict the events occurring on November 21, 2022. The defendants submitted these video recordings to the court in connection with summary judgment and also did so previously during discovery on June 19, 2025. ECF 76, ECF 133. The court now clarifies that these

sets of video recordings each show the same routine pat down search occurring as correctional staff removed Mr. Scruggs removed from his cell on November 21, 2022. The court further observes that, in her PREA report from January 2023, Investigator Statham represented that she had watched the same recording from November 21, 2022, and she, too, concluded that Sergeant Nolan had "conducted a proper pat search." ECF 127-5.

The court declines to take any further action requested by Mr. Scruggs, including appointing a special master to investigate potential fraud or staying summary judgment proceedings. Though certainly of concern, the degree to which Mr. Scruggs was subjected to unwanted touching before leaving his cell on November 21, 2022 is not material to resolving this summary judgment motion. Further, should this case proceed to trial, Mr. Scruggs can seek the admission of the purportedly unaltered copies of the video recordings that he received during discovery. Therefore, the motion for a special master and the motion for a stay is denied.

For these reasons, the court:

(1) GRANTS IN PART and DENIES IN PART the summary judgment motion (ECF 127), permitting Mr. Scruggs to proceed on his claims, except for portions of the failure to intervene claim against Lieutenant Jones as detailed in this order;

(2) DENIES the motion to strike (ECF 148);

(3) GRANTS the motion to clarify (ECF 151);

(4) DENIES the motion to stay (ECF 152); and

(5) DENIES the motion to appoint a special master (ECF 153).

SO ORDERED.

November 4, 2026

*s/ Damon R. Leichty*
Judge, United States District Court